The next case is case number 4-15-0963. Kirk Allen et al. v. Clark County Park District Board of Commissioners. Appearing for the Appellant is Attorney Smallhorn. Appearing for the Appellee is Attorney Geiler. Good afternoon. Mr. Smallhorn, are you ready to proceed? Yes. You may. May it please the Court. My name is Jake Smallhorn. I'm an attorney at the law firm of Helen Ebersbacher in Charleston. As has already been stated, I represent Kirk Allen and John Kraft. They were the plaintiffs in the underlying litigation. That litigation concerns violations of the Open Meetings Act alleged against the Clark County Park District Board of Commissioners at a February 17, 2015 meeting. The appellants have not appealed all of the counts which were dismissed on a motion for judgment on the pleadings. They're only appealing the dismissal of Count 3, which is an allegation of a violation of Section 2E of the Open Meetings Act. As this is an appeal of a 2-6-15 motion, it's subject to de novo review. Before I discuss Section 2E, I just briefly wanted to discuss what the overarching purpose of the Open Meetings Act is. It's to provide a safety net for members of the public to understand what's going on at a public meeting. It's to protect their right to know and to make sure that they have sufficient information to make the decision whether or not they want to show up to a meeting and discuss something that's of importance to them. And what's important in this matter, in this February 17 meeting, is that the underlying agenda items which we're contesting here pertain to development of a private subdivision in a public-owned park. It's called the Mill Creek Subdivision. So that is something that I would ask the Court to take into consideration when we're thinking about what the standard is here. People want to know about the development of a privately-owned, a privately-leased subdivision in the middle of the park. So the question is, what does a public recital mean as used in the statute? The question is pretty simple. It's what did the park district, what were they required to say at some point before the final votes were taken on these two agenda items? Well, the statute says no final action will be taken in a closed meeting. Final action shall be preceded by a public recital of the nature of the matter being considered and other information to inform the public of the business being conducted. And so what the facts of the case are, which for 2615 motion to be taken is true, are that the park district before the meeting, the only thing that they said was the only mention of what these items were on the agenda, which was provided as part of our brief. And they were just described as lease rates and restrictive covenants. It was board approval of lease rates and board approval of revised covenants. And that is the only explanation that the members of the public received before these votes. What was required to be said? Well, it's our argument and it's my argument and my contention that there should have been some explanation about what these lease rates pertain to, meaning are they lease rates for canoes? Are they lease rates for a boat slip? Are they lease rates for property? Well, if they mention a boat slip, do they have to include the amount? No. Why not? We're not even asking for that, Your Honor. Why not? Well, I think that this Section 2E is carte blanche for someone to request more and more information from a public body. I think, though, that if you look at the statute itself, it states two things. It says, recite the nature of the matter being considered. I won't argue that there was some discussion of the nature of the matter being considered, lease rates, and there was some discussion of the nature of the matter of restrictive covenants. Obviously, I think a person could reasonably imply restrictive covenants pertain to property. But the statute does go further than that. It requires other information that will inform the public of the business being conducted. There was a recent opinion that you wrote, Judge Steinman, about the Springfield case, the District 186 case. And the question there was, there were a few issues, but on the matter of agenda, a copy of the separation agreement, and then listing it under roll call, action items, employment, and termination issues was sufficient. We don't have anywhere near that level of disclosure here. We're asking simply that the public be provided some very limited information about the business that's being conducted by a public body. How would the public body know how much is enough? How much is some? I asked you, for instance, you said, well, they ought to describe the premises. Would it also have to include how much? Would it have to include who the owners were? Would it have to include the length? How is the public body supposed to know this? And more significantly, this is interpreting a piece of legislation. Why shouldn't we leave it to the legislature to specify what it is they want the public body to include? Why should we be guessing? Well, as you said yourself, it was clear and unambiguous, the meaning of what this Section 2E is. So it's clear and unambiguous. I don't know if it's a legislative issue here. It's an issue of interpretation of what this clear and unambiguous language means, which is what the court is supposed to do. Well, the legislature used the term of public recital. What does that mean? But they said more than just a public recital, though. I'm not saying that it has to all be done right before the vote is taken or anything like that. I'm simply saying that at some point before the vote is taken in a way that is accessible to the public, the district needs to do more than just recite the name of a pretty generic statement, lease rates. They need to explain what that is for. I don't think it's really that difficult. It says the nature of the business being conducted. To me, nature means essential elements or essential characteristics. So to me, the essential characteristics of a lease rate is what does that lease rate apply to? I think that's an essential characteristic of a lease rate. Wasn't there a posted meeting agenda at the board's office and on its website that included these terms? All it said was lease rate and restrictive covenants. When was that posted? It was posted timely, a couple days before the meeting. We're not arguing that it was not timely posted. This is Clark County. We're not talking about Cook County. If someone is interested in further information, how tricky would it be within 48 hours to check out further either at the park district or make other inquiries to find out more information? The answer to that question is actually contained in our brief where we discussed under the statement of facts what the park district said after somebody got up at this meeting and said, what the heck just happened? That's after the meeting. My question is, before the meeting, once this agenda was posted, the guy who said, what the heck just happened, isn't he 48 hours late? The board commissioner stated, you'll be able to find out once these are recorded. I think it wouldn't be difficult to assume that if someone asked before the meeting about these things, that would have been the same answer. No, I'm assuming no such thing. I don't know why we should. If someone shows up at the park district office in Clark County, the downtown sprawling marshal, and says, what are these concerning? Before. They're not going to be told? No, I don't believe they were. Would it make a difference if someone had actually shown up and asked and been told? In fact, your honor, there were two open sessions of this meeting. During the first open session, during the public comments period, someone did get up and ask, are you going to be discussing the Mill Creek lease rates and covenants today? And then gave a discussion and then asked the board some questions about it and didn't receive any reply. Your point is that the statute, if it's complied with, puts the public in a position where they don't have to go find out more about what this agenda item might be. It would be explained in the agenda itself. So that if it did say discussion of canoe lease, an individual that had a concern about the Mill Park subdivision would not be concerned about attending that meeting. However, if the agenda item said discussion of Mill Creek subdivision lease, that individual would know that that was something that was going to be discussed. Is that fair? Yes, correct. Okay. And is it your position that at a minimum the agenda included the name Mill Creek subdivision? I think it should say Mill Creek subdivision or even I think arguably you could even say real estate or just a description of what it pertains to. I think to say Mill Creek subdivision would be appropriate based on my view of it because people aren't, they're not going to want to show up if it's about canoes. Maybe they're not concerned about that. You suggested a number of possibilities. It could be boat slips, canoes, so forth. Are there such things? Not knowing anything about Clark County Park District affairs, are there any number of possible lease provisions that could be discussed? Yes. And I actually cited in my brief under the relief requested section that the agenda answers that question. It pertains, there's personal property, real property, vendor contracts. There are leases for things that are not real estate. That's my understanding. This was a 2-6-15 motion. Correct. Was that fled? Yes, we did state we wanted to know what this was for and what it wasn't for. But were those facts pleaded that there are other lease provisions that might have been the subject of this agenda item? I believe we did, yes. The Springfield decision of this court, the school district case, PLA was granted by the Supreme Court? It was granted by the Supreme Court. Was it? I don't believe so, but I didn't check it today. Well, I thought maybe it had been. I can't, I'm not sure. But if it had been, would we be wise to wait for that decision? Since somehow, I was a little surprised, we seem to be the only court that has yet addressed this issue. You know, Your Honor, what I'm looking for and what my clients are looking for is, yes, I agree with the statement that this statute is pretty clear and unambiguous. What I wouldn't agree with is the notion that that means we know exactly how it should be applied to a park district. And what we're asking is for the court to determine if this meets the floor of what is required by that statute. I don't think it's necessary to wait for the Supreme Court to enter a ruling on that. If anything, I think they would probably appreciate some guidance. There's very little case law on this issue. Well, let me ask you, Mr. Smallhorn. Were you trial counsel in this case, too? Yes. Okay. You've obviously given this a lot of thought. Let's switch sides for the moment. You're advising the Clark County Park District Board of Commissioners. They want to do the right thing, but they don't want to have to spend more time than necessary doing whatever is the right thing. So they say, to comply in good faith here with this provision, what do we have to say? What would you advise them? Well, first of all, one I would like to point out, I don't think it would be very difficult at all to comply. I think that you would need to say, at the very least, lease rates for Mill Creek subdivision lots. Or you would need to say restrictive covenants for setbacks at Mill Creek subdivision lots. It's that simple. These are things that the board already has in mind. The board says, will that be enough, or do we have to provide additional information to avoid being sued? Well, I don't think that there's no imposition of some good faith test in the Open Meetings Act. It's did you violate these minimum standards, which are pretty minimal. I mean, we're not asking the board to recite every provision of a lease or something like that. We're asking them to add a couple words so that people know what they're talking about. I think if this court provided that guidance here, which you have the opportunity to do today, that they'll know what they need to do. In the Springfield opinion, you said that you found specifically that this agreement, the separation agreement, provided the pertinent details and that it not need to include a detailed explanation or discuss the significance or impact, that those did not need to be discussed. And I wouldn't even argue that. I think that's way too onerous of a standard. We're not asking you, but please note, you said detailed explanation, not an explanation. You need to have something so that people know what the public body is doing. So let's just take an example here. Here the agenda indicated discussion of lease rates. There was also discussion of covenants. Let's just take discussion of lease rates. Suppose you have a school board that places on its agenda discussion of school bus transportation contract, comes out in votes on that. Is the agenda description discussion of contracts sufficient to comply with Section 2E? I'm not arguing that you have to look at the agenda to determine what compliance with 2E is. I think you have to look at the totality of the circumstances of what happened prior to the vote. And I believe that's what happened in the Springfield case. The agenda item had a hyperlink to the separation. Yeah. I mean, what else? How could you require more from the public body? Okay. But in my example, so you're saying that on it, and maybe you're not saying this, I don't know, but the description of the agenda item alone would have been insufficient to comply with 2E. But if there was then discussion in open session after they came out of executive session to indicate that they were voting on approval of a school bus transportation contract, then that would be compliant with 2E? Exactly. That's all that we're asking for. So you can have general descriptions in your agenda, but the people at the meeting, I mean, if you leave a meeting and you still don't know even the general idea of what was being voted on, there's a problem there. I think as long as there is a description before they take the vote, I think that's sufficient. Is a hyperlink an important factor? Is that something that we should look to, that the hyperlink was present in Springfield and nothing was present here to further inform the public? I'm not asking you to look at that as evidence of what the minimum thresholds are. I'm asking you to look at that and say, of course, that seems to go above and beyond what the disclosure requirements are. We decided what the meaning of that statute doesn't include. Now we need to talk about what does it need to include. And I think here that if you look at it, just saying restrictive covenants and lease rates is just not enough under the circumstances. You know, can I give you a test that will work every time? No, but that's why we practice the law. So the Mill Creek lease, how does that put the Mill Creek lease? Mill Creek subdivision. The Mill Creek subdivision would have been a help, but if I understand your argument, that in itself still would not have been sufficient. No, I think that that would have been sufficient. Just to say, we're going to be talking about the Mill Creek subdivision? What I would like to see and what I think is the minimum should be is that you should explain, again, pertinent details is what was used in that Springfield opinion, here's to me what pertinent details are. One, where? Where or if it's real estate, but what kind of property are we talking about? Are we talking about real estate? And if so, tell us what real estate? Is it the Mill Creek subdivision or is it the entire park? And two, what is, so with the lease rate, I think it's pretty clear what a lease rate is. It's a lease rate. With restrictive covenant, I think you also need to describe what that covenant pertains to. It's not evident right on the face of it what it is. There needs to be just a very simple, I'm talking about a word or two here in the agenda, or a word or two that could have been spoken at that second session of the open meeting that would have resolved this issue. Mr. Smallhorn, you're out of time. You'll have time in rebuttal. Okay. Ms. Geiler. May it please the Court. Counsel. I think you understand I don't have a lot to say about this, and maybe that's why we're here. Yeah, I was going to say that's consistent with your claim. But I don't have a lot to add to the questions that have been asked. For my part of this argument, I'd just like to respond. What's happening here is Clark County Park District, first of all, or Mr. Smallhorn just said this was about the Mill Creek subdivision. He knew it. He knew it before he filed the lawsuit. Everybody sitting there knew it. They asked about it in public comment before there was a vote. Well, what if they didn't? I mean, after all, it's a small county, and you might think that they'd be more familiar than if this were Lake County or Cook County, certainly. But what if they didn't? Or what if there were multiple potential lease rate discussions and Mill Creek was just one of them? I mean, can it really be that we're going to decide this case based upon what you claim they knew anyway? No, you can't do that. But I'm trying to be – it's disingenuous to say that this could have been canoe rates. We don't write canoes by way of example. I suggest that that's an irrelevant argument if we're talking about statutory construction and what the statute requires as a minimum to argue, well, they knew anyway. Well, we don't know that, but even so, it doesn't make any difference. The question is, can it really be said that board approval of lease rates, board approval of revised covenants is a sufficient public recital? Isn't that the issue? I think that is the issue. Could you imagine the park commissioner saying anything less that could possibly comply? I haven't tried to imagine him saying anything less. I have, and I'm not sure I can. But more specifically, given the introduction that Mr. Smallhorn talked about, where you are familiar with what the legislature was intending to accomplish with the Freedom of Information Act and with the Open Meetings Act, why should we have such a cramped interpretation of this? Why shouldn't we tell the park district, look, you know, it's not that hard, why don't you provide some additional information so that people who are interested from this listing here, this meeting agenda item, could tell without having to go anywhere else what the agenda item would cover. I think we could. I don't think we have to. Well, why shouldn't you have to is, I suppose, my question. Why shouldn't we construe this statute, which is ambiguous, as public recitals, not defined anywhere, I don't know what it means, as saying that it's designed so interested citizens should be able to determine reasonably from what's listed as to what the subject is going to be. And, in fact, you can't tell from this, can you? Revised covenants and lease rates? I think you can. We're going to talk about the revised covenants. Yeah, okay. And we're going to talk about the lease rates. Of what? Which is what was done. Of what? Of whom? Mr. Smallhorn's point is, where or whom? And then the motion that was made, because we're not talking about is the agenda adequate, the agenda is adequate. There's no question the agenda is adequate. This agenda? This agenda is adequate. Adequate for what? I think, Justice Harris, you asked, what if we put on an agenda for the school district? What if we put on an agenda approval of contracts? No, just discussion of contracts. Discussion of contracts. Right. Absolutely you can do that. Then you come out of your closed session after you've decided, okay, we're going to go with this bus transportation group, and you move to approve a bus transportation contract with John Doe Bus Transportation. Right. That is adequate. Assuming there's a motion to approve the school bus transportation contract. Absolutely. But that's prior to final action being taken. So what was it here that was said in the open meeting that indicated that this was something more than just discussion of lease rates, restrictive covenants? What takes it out of the example that I gave? So with respect to the lease rates, the commissioner who moved the approval of the lease rates, and it's really hard. I don't know if you all listened to the recording. Just read the transcript. But it's very difficult to follow. But that wasn't a real transcript. It was very difficult. It was quiet. But the commissioner who moved to approve that said, motion to approve the lease rates that came from the appraisal. There was an appraisal that had previously been talked about at Mill Creek subdivision. What they were doing was subdividing a piece of it to do long-term leases for private, to raise money for private residences. So they had an appraisal that also established what the lease rates would be. So Commissioner Yargus moved to approve the lease rates that came from the appraisal. There was a second, and that was approved. So that's what makes it sufficient? I believe that does make it sufficient. If you're not careful here, what happens is we go down this slippery slope. And I know that sounds like law school, but I'm old enough to talk back to law school. So it's a slippery slope. You listen to Mr. Smallhorn, and for him, it would have been okay. For Jake Smallhorn, it would have been okay, as he stood here today, to say approval of Mill Creek subdivision restrictive covenants, or Mill Creek subdivision lease rates. That would have been okay for Jake. Okay? That would have been okay for me. Maybe for you guys. I don't know. But I can tell you the next step is, well, what are those lease rates? Not, what are they to? Justice Stegman, you asked Mr. Smallhorn, okay, did they have to put the amount? Well, why isn't that a pertinent fact? If the canoe is a pertinent fact. Well, he just said that he wouldn't ask for that, but that's not necessary. He did. Well, I asked a question as to what was minimally necessary, and he said Mill Creek subdivision, that identifier. That's what he's saying was minimally necessary to identify this, to bring it within compliance of 2E. So if we're using that as what I believe was a conceded comment by counsel, you know, why are you talking about the amounts? Because earlier in a question by Justice Stegman, he was asked a similar question. Your question was, would we put Mill Creek subdivision in there? Is that good enough? And he said yes. Justice Stegman asked that as well. Then Justice Stegman said, would we have to put the amount of the lease rate? And he said, well, no. Why not? Why wouldn't you have to put the amount of the lease rate? Why isn't that not a pertinent fact? Let me ask you a question along another line that I didn't ask Mr. Smallhorn, but I don't want to be losing track of. We're talking about the agenda that says board approval, lease rates, and board approval of revised covenants. They were posted in a timely fashion in advance of the meeting. The statute talks about how you have to, regarding final action shall be preceded by public recital of the nature of the matter being considered and other information that will inform the public of the business being conducted. If the agenda items were no better than they were, but prior to final action, someone got up and said, okay, we said we're going to be talking about lease rates at the agenda. The lease rates concern Mill Creek and goes into details. That's what we're going to be voting on. Would that be adequate if the recital goes beyond what was in the public agenda? Do you understand what I'm saying? I do, and sure. I think that what was done was adequate. Well, you think the agenda was adequate, so that's right. It's really a question for Mr. Smallhorn that I'd be interested in. But it seems to me we're dealing with two different things. One is the public agenda. In the Springfield case, we had the hyperlink in advance, and then we had some reference back to it. But maybe if we just talked about it at the public recital at the meeting before final action, that would be sufficient. So maybe it's just a question of requiring the Park District to provide additional detail. And your question is a good one, and it's what I was wondering about, but what's the additional detail? And shouldn't something more than this be required so people can have a sense of what just happened? What are you voting on here? I think something more than this would be nice. Is it required? Is it statutorily required? Well, the language is final action shall be preceded by a public recital of the nature of the matter being considered and other information that will inform the public of the business being conducted. Why should we deem this limited recitation reference to board approval of lease rates and board approval of revised covenants as being a sufficient public recital? I think it is a sufficient public recital. I agree. What did the legislature mean by public recital? It could have been, here's where we get stuck. I think we're all talking about the same thing. I don't think the agenda and the public recital before the motion really have to be different for 2E. I think it's the same thing. You can cover that in either spot. You can cover it with the agenda. You can cover it during commissioner comments. You can cover it during public comments. You can cover it in the motion. You can cover it in the discussion about the motion. You can cover it. Just as long as it precedes the final action being taken. Exactly. So I don't think it's a key where it comes from. Okay, but in this case, we had the agenda items, but we didn't have any further discussion prior to the vote, did we? We did. What did they say? We had the motion with respect to the lease rates, by way of example, where Commissioner Yargus moved to approve the lease rates that came from the appraisal. What appraisal? Do we know? And how would someone, I'm sitting there, I'm an interested citizen, nothing better to do with my evenings than attend the Clark County Park District meetings, and I'm thinking, what is this appraisal of what? What's being appraised here? What are the lease rates? Don't you even have to identify the property? I think what they did was adequate. When you say, do we have to identify the property, what do you mean, Justice Steigman? Do you mean this lot? Do you mean the whole subdivision? Do you want the legal? Mill Creek. Mill Creek. You ever been to Mill Creek Park in Marshall, Illinois? It's a beautiful park. Everybody in this room would agree to that. Okay. What do you mean? Where does it stop? So they said, improve the lease rates. It's a good question, where does it stop? And the slippery slope may be a cliche, but, in fact, I think it's a legitimate argument, too. But can we really say that this is sufficient, that this can hardly be more minimal? And it's troubling to put our imprimatur on this and say, yeah, this is good enough. It seems to me that maybe if we're talking about interpreting the statute, which is ambiguous, I find it public recital, I don't know where else it exists, that to put it on the crabbed interpretation, you're suggesting would be inconsistent with the purpose of the Open Meetings Act. Well, I'm certain that the Attorney General would agree with that, but, quite frankly, it's an imposition on the Park District Board of Commissioners. So they've got a lot of business to conduct. And we should be sensitive to that, by the way. You know, we don't want to be burdening these people unduly, but, you know, the legislature is the policymaking body, and they said, there's a policy we want people to know, and is this really enough to let them know? I believe it is. And how burdensome would it have been to say Mill Creek, rather, in all this? Mill Creek Subdivision. Could have. Had we known we were going to be here, we probably would have. But we would have probably still been here. Well, I don't know. Mr. Smallhorn says perhaps not. Maybe not with Mr. Smallhorn. But the fact of the matter, that's the problem. It's no big deal to add Mill Creek Subdivision to it. We're not trying to hide anything or do anything wrong. The fact of the matter is, it was clear. This was a big deal. It was clear what we were doing. And, you know, if it gets sent back, I suppose we'll make it more clear at the trial court, but they met. They met the burden. It's a very minimal burden. They met that burden. Thank you. All right, thank you. Mr. Smallhorn, your final argument. I just wanted to say first, I did not file the original complaint in this case, and I knew nothing about the Mill Creek Subdivision until well after this litigation is underway. And I just wanted to make the point, and I mention that because I think Section 2E is to be interpreted as a protection for members of the public, so that not necessarily so when they come to the vote. The agenda is supposed to let people know very generally what the public body is going to be talking about. This Section 2E, I think, is in there so that after a vote is taken, someone can walk out of that room and explain in at least the most general sense what that vote was for. So you would agree with Ms. Giler that the agenda description could be even more generic than what was on there, but just as long as there was additional detail given prior to the final action being taken, that that would then be compliant with 2E? With 2E specifically, yes. I didn't brief how generic the agenda can be. There are plenty of cases on that issue. Because I do think... To be more specific, as I mentioned, I asked the wrong party the question because it didn't occur to me sooner. Given how your argument is, the agenda items weren't good enough. Assuming we agreed with that, let's assume that prior to the vote at the meeting, the chairman or whoever it was got up and said, by the way, this is a vote, when we talked about these agenda items, this is for Mill Creek Park. I think that's sufficient. And that would have overcome the deficiency of the agenda item because to talk about before the final vote, as long as this is mentioned in a public recital, I guess that would be it. Because if the chairman got up and said that, then when they came back and they voted on it, people would know what just happened. I mean, that's the point here. Do they need to know every single detail? No, the Open Meetings Act doesn't require that. Can you provide us some guidelines on how much detail they would need to know if we're going to write this up? Yeah, I think what, I mean, I tried to do it in my brief, which is, I do believe, I think you have to go back to the language. So you have the word, it says the nature of it. What is nature? Well, Webster's Dictionary, there's about 15 definitions of nature, but the one that is pertinent to this discussion says the characteristics, the essential elements. To identify it in some fashion? Yeah, to identify it. So if we're talking about a piece of property, one, we say property, and two, I do believe that an essential element is what property? Are we talking about the whole park district? One, subdivision? Well, I think Ms. Guyver's concerns are well taken about where would you draw a line here, and it might be you would be satisfied by that, but how, what guidance do we provide for the future? Other people would say, do you have to put in a plat diagram and how much it's going to cost and all the rest of this? Absolutely not, and I believe that you, with much patience, came up with a notion in your Springfield opinion when you said, well, you were saying the trial judge's ruling, but you said the guideline was you don't need to give a detailed explanation or discuss the significance or impact. You need to provide the essential elements. So I think that is... That's what we should say in this case and figure out what those are? I think that's basic enough here. You give some guidance by showing all that they would have needed to have said Mill Creek subdivision, and they would have needed to say for the covenants setbacks at Mill Creek subdivision. I think that's guidance for a park district. They don't have very many other types of issues that come up. If you say a vendor contract... You mean the Clark County Park District is in a hotbed of litigation? It is. I think there's... I was here with you. But I would just say that I think that a little bit of guidance here would go a long way, because this shouldn't be as complicated or as slippery of a slope as we're talking about. You don't have to give every single detail. I don't even think you have to give the amount. I mean, we have to be realistic. There's confidentiality agreements, other issues at play here when you apply this to other circumstances. But I don't think that stops... If someone were to look at that, even without that agreement, I think the Springfield School District probably met the requirements of 2E, because they named the guy who was being separated, and it was put in the employment termination section. They provided... People knew what was going to be voted on. All right, Mr. Smallhorn. Thank you. You're out of time. Counsel, thank you both. The case will be taken under advisement and a written decision shall issue.